## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| JACQUELINE VALRIE, individually and on behalf of all similarly situated individuals | * <br> * <br> * |
| Plaintiff, | * <br> * |
| vs. | *    CV-11-00404-CG-N <br> * |
| NATIONSTAR MORTGAGE, LTD., | * <br> * |
| Defendant. | * |

### RESPONSE IN OPPOSITION TO MOTION TO DISMISS

COMES NOW the Plaintiff Jacqueline Valrie ("Plaintiff") and in response and opposition to the Motion to Dismiss (Doc. 15) filed by Defendant Nationstar Mortgage, LTD ("Nationstar"), submits the following memorandum:

### FACTUAL BACKGROUND

On July 29,2003, Plaintiff executed a real estate mortgage with Homecomings Financial Network, Inc. in the amount of $115,900.  This was secured by the Ms Valrie's home in Mobile County.  Servicing of the loan was subsequently transferred to Nationstar.  (Complaint, ¶ 5)

Nationstar's role was limited to servicer until September 21, 2010 when the mortgage "together with the indebtedness" secured by the mortgage was transferred to Nationstar by an "Assignment of Deed of Trust" which was later recorded in the Mobile County probate records. That Assignment was executed by Christine Odom, who signed as Vice President of Mortgage Electronic Registration Systems, Inc. ("MERS").  That Assignment was recorded in the probate office of Mobile County, Alabama on or about November 4, 2010. (Id., ¶ 6).

On October 13, 2010, Nationstar instituted foreclosure proceeding in its name by publishing in the Mobile Press Register a foreclosure notice stating that a foreclosure sale would be held by Nationstar on November 8, 2010.  According the notice, the mortgage was "transferred and assigned to Nationstar Mortgage, LLC."  The sale described in the notice was to be conducted by Nationstar in its own name.  In other words, there is no entity mentioned on whose behalf the sale will be conducted by Nationstar. (See Foreclosure Notice attached hereto as Exhibit "1").[12]

The Complaint contains a single count for violation of Section 1641(g) of the Truth-in-Lending Act ("TILA"), at 15 U.S.C. § 1641(g).  This is a new provision, added in 2009, which requires notification of the borrower within 30 days of any transfer or assignment of their mortgage loan to a third party. Nationstar failed to provide to Plaintiffs with the notice required by Section 1641(g). (Id., ¶ 9).

## STANDARD FOR MOTION TO DISMISS

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the Plaintiff's Amended Complaint and limit its consideration to the pleadings and exhibits attached thereto.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); Wilchobe v. TeeVee Toons, Inc., 555 F. 3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949,

---

[1]Ms. Valrie  alleges that the foreclosure was initiated in violation of a written Loan Modification Agreement entered into between her and Nationstar.  This is the subject of ongoing litigation in Mobile County Circuit Court.

[2]In light of Nationstar argument that it did not acquire title to the loan, Plaintiff anticipates amending the Complaint to add allegations describing the foreclosure proceeding. Plaintiff does not believe that such allegations are necessary to survive the motion to dismiss, but wish to notify the Court that they are prepared and able to make those allegations.

173 L.Ed. 2d 868 (2009)(quoting Twombly, 550 U.S. at 570). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 55. "[A] formulaic recitation of the elements of a cause of action will not do[.]" Id. Rule 12(b)(6) does not however "impose a probability requirement at the pleading stage." It is sufficient if the complaint succeeds in identifying facts that are suggestive enough to render the elements plausible. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007) ("The Court has instructed us that the rule 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (quoting Twombly, 550 U.S. at 556, 127 S. Ct. at 1965).

## ARGUMENT

The main thrust of Nationstar's motion is that Plaintiff has failed to adequately plead that ownership interest has transferred such that the Section 1641 requirement was triggered. Nationstar also argues that Section 1641(f) provides it immunity as a servicer, regardless of what may have been transferred by the assignment. To a large degree, if not completely, the recent decision from Judge Steele in Reed v. Chase Home Fin., LLC, CIV.A. 11-0412-WS-C, 2011 WL 4946439 (S.D. Ala. Oct. 18, 2011), disposes of this argument. Judge Steele ruled in Reed that allegations identical to those made were sufficient to survive a Rule 12 motion. There are differences between this case and Reed which make Nationstar's motion weaker than that addressed in Reed; most importantly the fact that the Valrie assignment, unlike in Reed, specifically states that the assignment is transferring the mortgage *and the indebtedness* secured by the mortgage to Nationstar. This is addressed below.

3

**A.      Section 1641(g) Notice Requirements**

Section 1641(g) was added to TILA as part of the Helping Families Save Their Homes Act

of 2009.  P.L. 111-12, 123 Stat. 1632, Section 404(a).  Section 1641(g) provides as follows:

(g) Notice of new creditor

(1) In general

In addition to other disclosures required by this subchapter, not later than 30 days
after the date on which a mortgage loan is sold or otherwise transferred or assigned
to a third party, the creditor that is the new owner or assignee of the debt shall notify
the borrower in writing of such transfer, including--

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf
of the new creditor;

(D) the location of the place where transfer of ownership of the debt
is recorded; and

(E) any other relevant information regarding the new creditor.

(2) Definition

As used in this subsection, the term "mortgage loan" means any consumer credit
transaction that is secured by the principal dwelling of a consumer.

15 U.S.C. § 1641(g).

The purpose of this section was to introduce into the law the "common sense" notion that if

"[you] have a mortgage on your home, you ought to know who holds the mortgage."  155 Cong. Rec.

S5098-99 (statement of Sen. Boxer).  The new requirement is intended to provide "transparency and

gives borrowers an additional tool to fight illegitimate foreclosures or to negotiate loan modifications

that would keep them in their homes."  Id. at p. 5099.  It was also passed to fill a then-existing

4

enforcement gap regarding disclosure of loan ownership.  Congress recognized that servicers are required to disclose the transfer of servicing rights (under RESPA) and that TILA Section 1641(f)(2) required servicers to provide the name of the obligor in response to a specific request by the borrower; but acknowledged that "servicers routinely ignore requests from homeowners for information on the noteholder." Id.  It was also recognized that existing law imposed "no penalties . . .for noncompliance and no remedies for a homeowner faced with a recalcitrant servicer." Id.  To rectify this deficiency, Section 1641(g) provides for the first time an affirmative duty on the new owner of an obligation to notify the homeowner and provide basic information regarding the new owner any time ownership was transferred.  Moreover, Section 1640 was amended to add Section 1641(g) to the handful of violations specifically mentioned as those which carry statutory penalties. "[A]ny creditor who fails to comply with any requirement imposed under this part, **including ... subsection (g) of section 1641** is liable to such person in an amount equal to the sum of–. . .(iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000." 15 U.S.C. § 1641(g)(emphasis added).

**B.    Who is Subject to Section 1641(g) Disclosure Requirements**

Section 1641(g) imposes transfer disclosure requirements on the "creditor that is the new owner or assignee of the debt." 15 U.S.C. § 1641(g)(1).  While the term "creditor" is defined in TILA, that definition centers around the original extension of credit.  On the other hand, by imposing disclosure requirements on the "new owner or assignee" it is obvious that Congress meant that Section 1641(g) requirements apply to persons other than the original creditor.  The Federal Reserve

Board addressed this dichotomy when it issued regulations implementing Section 1641(g).[3]  In its

preamble to the issuing of its definition of "covered persons," that Board stated the following:

> Generally, TILA and Regulation Z apply to parties that regularly extend consumer credit. However, Section [1641] is not limited to persons that extend credit by originating loans. Section 404(a) imposes the disclosure duty on the "creditor that is the new owner or assignee of the debt." The Board believes that to give effect to the legislative purpose, the term "creditor" in Section 404(a) must be construed to refer to the owner of the debt following the sale, transfer or assignment, without regard to whether that party would be a "creditor" for other purposes under TILA or Regulation Z. The Board declines to limit Section [1641] to parties that originate consumer loans because such an interpretation would exempt a significant percentage of mortgage transfers which are acquisitions by secondary market investors that do not extend consumer credit and are not "creditors" for purposes of other provisions of Regulation Z.

74 Fed. Reg. 60143 (November 20, 2009).[4]

The Board's definition of "Covered Persons" includes any entity that acquires legal title to

the obligation, subject to certain specifically described exceptions.  That definition states as follows:

Mortgage transfer disclosures.

(a) Scope. The disclosure requirements of this section apply to any covered person except as otherwise provided in this section. For purposes of this section:

> (1) A "covered person" means any person, as defined in § 226.2(a)(22), that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer, and who acquires more than one mortgage loan in any twelve-month period. For

---

[3]Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive". *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (U.S. 1980) See also *Clay v. Johnson*, 264 F.3d 744, 749 (7th Cir. 2001)( "The Official Staff Commentary to Regulation Z published by the Board is binding and dispositive in TILA cases unless the commentary is determined to be demonstrably irrational.")

[4]This statement was issued in connection with the interim rule promulgated on November 20, 2009.  The Board's final Section 1641 rule was published on September 24, 2010.  No changes were made to the interim definition of "covered person" and that definition became the final rule.  75 Fed. Reg. 58489 (September 24, 2010).

purposes of this section, **a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation.**

\*   \*   \*

(c) Exceptions. Notwithstanding paragraph (b) of this section, a covered person is not subject to the requirements of this section with respect to a particular mortgage loan if:

(1) The covered person sells, or otherwise transfers or assigns legal title to the mortgage loan on or before the 30th calendar day following the date that the covered person acquired the mortgage loan which shall be the date of transfer recognized for purposes of paragraph (b)(2) of this section;

(2) The mortgage loan is transferred to the covered person in connection with a repurchase agreement that obligates the transferor to repurchase the loan. However, if the transferor does not repurchase the loan, the covered person must provide the disclosures required by this section within 30 days after the date that the transaction is recognized as an acquisition on its books and records; or

(3) The covered person acquires only a partial interest in the loan and the party authorized to receive the consumer's notice of the right to rescind and resolve issues concerning the consumer's payments on the loan does not change as a result of the transfer of the partial interest.

12 C.F.R. § 226.39(a)(emphasis added).

As this regulation makes clear, any entity that acquires legal title to a loan is covered by the disclosure requirements, unless such person falls within the subsection (c) exceptions. Contrary to Nationstar's position, there is no blanket immunity for servicers. The definition specifically contemplates the possibility that a servicer can become a "covered person" by taking an assignment of the debt. If the servicer acquires the debt, then it is a "covered person," unless the assignment was "solely for the administrative convenience." Id.

**C.    Complaint Adequately Alleges Transfer of Loan**

7

The Complaint alleges that Nationstar acquired ownership of the loan upon the September 21, 2010 MERS Assignment. Nationstar attacks in three ways; each fails as basis for dismissal.

First, it states that the Valrie's allegation that ownership transferred with the assignment is an  insufficient "formulaic recitation" of elements of liability.  This very same attack was rejected by Judge in the Reed case.  As here, the mortgage company in Reed argued that the allegation that ownership was conveyed by an assignment of the mortgage was insufficient because there were no more details provided as to the transfer.  Judge Steele held that reference to such an assignment as a basis for liability at least met the Iqbal plausibility standard.  In Reed, the defendant's argument was buttressed by the fact that the assignment only mentioned the mortgage, with no reference to the debt.  However, in Alabama an assignment of the mortgage alone is presumed to also transfer the debt secured thereby, unless there is an expressed intent by the parties to separate the debt from mortgage.  Agricola Partners, Inc. v. Parker, 655 So. 2d 967, 968-69 (Ala. 1995); Seabury v. Hemley, 174 Ala. 116, 121, 56 So. 530, 531 (1911); Crum v. LaSalle Bank, N.A., 55 So. 3d 266, 269 (Ala. Civ. App. 2009), reh'g denied (May 14, 2010), cert. denied (Aug. 6, 2010).  Judge Steele held that allegations referencing the assignment, together with this legal presumption, were sufficient to defeat the motion to dismiss.  Here, the Plaintiff's case is much stronger.  The assignment reference by and attached to the Complaint specifically states that it is transferring the "indebtedness" to Nationstar.  Moreover, the "indebtedness" is described as being the "note being secured by" the mortgage.  There is no question here of the parties' intent to convey the mortgage along with the note and the debt created in the note.  More so than in the Reed case, this assignment creates at least "the plausibility of the complaint's factual allegation that the defendant held ownership interest in the note and was thus a creditor

8

subject to Section 1641(g)." Reed, 2011 WL 4946439, slip op. 4.

Second, Nationstar states that because this is a MERS assignment, it could not have conveyed title to the debt. Nationstar states that since MERS is only a nominee it may only convey the mortgage. Nationstar asks the Court to accept at face value Nationstar conclusory statement that MERS, when it executed the assignment, had no authority to convey the debt. This in turn requires the Court to assume that the assignment itself, which specifically states that the debt is being conveyed, is a sham. Discovery may in fact reveal that this assignment was a sham and a fraud, and ineffective to convey any ownership interest to the foreclosing entity. However, this issue is outside of the scope of this Rule 12 motion. The Complaint alleges that ownership of the loan was conveyed and references an assignment which on its face conveys the debt to Nationstar.[5] This sufficiently pleads that Nationstar is a "covered person" for purposes of Section 1641(g).

It is noteworthy that shortly after receiving this assignment, Nationstar instituted a foreclosure in its own name. In Alabama, the only person entitled to foreclose through a power of sale provision is the "person who, by assignment or otherwise, becomes entitled to the money thus secured." Ala. Code § 35-10-12. Obviously, Nationstar can not be "entitled to the money thus secured" unless it has acquired the loan. The Alabama Supreme Court long ago eliminated that possibility that an entity could on the one hand claim only to hold title to the mortgage (and not the note) while at the same time conduct a valid foreclosure. "But an agent of such holder to whom the

---

[5]In another unsupported statement, Nationstar states that the conveyance falls under the "beneficial interest" exception referenced in the commentary to 12 CFR § 226.39. However, the commentary gives an example of "beneficial interest" which clearly eliminates this exception as a possibility here. The commentary states that "beneficial interest" applies to owners such as purchasers or certificates or mortgage-backed securities who only own the securitized interest and do not also own an interest in the loan itself. 12 C.F.R. § 226.39(a)(3) Commentary.

9

mortgage is delivered merely for the purpose of foreclosure, ***having no ownership of the debt***, is not authorized to foreclose in his own name, and execute a deed in his name to the purchaser." <u>Carpenter v. First Nat. Bank</u>, 236 Ala. 213, 215, 181 So. 239, 240 (1938)(emphasis added). Thus, if what Nationstar states in its motion to dismiss (i.e., it did not acquire ownership of the note) is correct, then it had no right to institute foreclosure proceeding in its own name. In any event, the Complaint adequately alleges that the assignment did in fact convey the debt and the mortgage to Nationstar.

Third, Nationstar states that the Complaint should be dismissed because there is no allegation that Nationstar has assigned to it more than one loan per year. While the more than "one loan per year" requirement is listed in the regulatory description of a "covered person," there is no requirement that the Complaint address every possible aspect of the claim. As <u>Reed</u> establishes, the allegation that ownership was conveyed by an assignment, along with reference to the assignment itself is sufficient. Moreover, even if the Court deemed it necessary for this allegation to be made, it is easily rectified. A brief review of probate records reflect no less than 24 assignments to Nationstar in 2011 in Mobile County alone. Therefore, even if this were deemed a necessary recital, dismissal would not be appropriate because leave to amend the Complaint would rectify the omission *Spear v. Nix*, 215 F. App'x 896 (11th Cir. 2007)(if amendment would not be futile plaintiff "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice"); *Harris v. Hancock Bank,* 2011 WL 1435500, *3 n.5 (S.D.Ala. Apr. 14, 2011).

**D.      There Is No Blanket Immunity for Servicers**

In addition to its attack on the sufficiency of the pleading, Nationstar asserts that it can never be liable under Section 1641(g) because it is a servicer. Nationstar interprets Section 1641(g) and (f) to provide a blanket exception for servicers.  This is simply not the case.  As stated above, the definition of "Covered Persons" clearly include servicers, as long as the servicer acquires legal title to the loan and the transfer is not "solely for the administrative convenience of the servicer in servicing the obligation."  Id.  The "once a servicer always a servicer" position taken by Nationstar is also directly contradicted by the so-called "safe harbor" provisions in Section 1641(f)(1) and (2).

1641(f) provides as follows

> Treatment of Servicer
> (1) In general
> A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section **unless the servicer is or was the owner of the obligation.**
>
> (2) Servicer not treated as owner on basis of assignment for administrative convenience
> A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer **solely for the administrative convenience of the servicer in servicing the obligation**. . ..

15 U.S.C.A. § 1641(f)(emphasis added).

These provisions do not mean that servicers can never become owners of the obligation or subject to regulation as such.  Section 1641(f)(1) states that a servicer is not to be treated as assignee, unless it becomes owner of the obligation.  Valrie alleges that Nationstar did become the owner of the obligation.  Furthermore, the "safe harbor" of Section 1641(f)(2) only applies to an assignment "solely for the administrative convenience of the servicer in servicing the obligation."  Id.

Nationstar, without any explanation, asks the Court to accept its assertion that the assignment of the debt was "solely for [its] administrative convenience." As explained below, such a unsupported statement can be a basis for dismissal. Moreover, what Nationstar did after it acquired the mortgage betrays any such position. Nationstar took assignment of the loan not to accomplish some menial administrative task, but rather for purposes on conducting a foreclosure <u>in its own name</u> as the foreclosing creditor. As stated, Alabama law allows a nonjudicial foreclosure only by the "person who, by assignment or otherwise, becomes entitled to the money thus secured." Ala. Code § 35-10-12. It is apparent from the face of the assignment and the actions taken by Nationstar that the assignment transferred the debt to Nationstar so that it became the creditor for purposes of foreclosure. While there is a dearth of authority as to what constitutes "administrative convenience," there is no support for Nationstar's naked statement that this the transfer for purposes of foreclosing on someone's home is a mere "administrative convenience." To the contrary, the ability to conduct a foreclosure is arguably the most fundamental aspect of a mortgage.

One case that discusses the term "administrative convenience" in the mortgage context undercuts Nationstar's position. A situation analogous to the one at bar was addressed in <u>Fairbanks Capital Corp. v. Jenkins</u>, 225 F. Supp. 2d 910 (N.D. Ill. 2002). Illinois is a judicial foreclosure state. Fairbanks, a servicer, filed a judicial foreclosure action in which it alleged that it was the owner and legal holder of the debt. The borrower countersued, alleging that it did not receive proper disclosures and that it had a right to rescind under TILA Section 1635. As a defense to the counterclaim, Fairbanks claimed that it was not the owner of the obligation for purposes of rescission and that its pre-foreclosure assignment was "solely for administrative convenience" under Section 1641(f)(2). The court soundly rejected the notion that Fairbanks could at the same time be both an owner of the

debt for purposes of conducting a foreclosure in its own name and also a "servicer" accepting

assignment "solely for administrative convenience."

> Fairbanks argues that defendants are not entitled to assert rescission as an affirmative defense because Fairbanks is a mere "servicer" of the loan and thus is not an assignee within the meaning of § 1641(c). A "servicer" is the person or entity "responsible for servicing [the] loan"—that is, for "receiving ... scheduled periodic payments from [the] borrower." 12 U.S.C. § 2605(i)(2) & (3) (cross-referenced in 15 U.S.C. § 1641(f)(3)). A servicer of a consumer debt is not considered an assignee for purposes of § 1641 "unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1). And a servicer is not considered the owner of the obligation based on assignment made "solely for the administrative convenience of the servicer in servicing the obligation." *Id.* § 1641(f)(2).

> Fairbanks contends that it is a mere servicer and that the assignment was made solely for its administrative convenience in servicing the loan. This contention is contradicted by Fairbanks' own complaint. In the complaint, Fairbanks alleges, without qualification, that it is "the owner and legal holder of [the] note, mortgage, and indebtedness." . . .Though it is premature to determine whether this admission will conclusively bind Fairbanks for the remainder of this litigation, the allegation is sufficient, for present purposes, to defeat Fairbanks' contention that it is a mere servicer not liable under § 1641: a servicer which owns the debt is considered an assignee for purposes of § 1641. 15 U.S.C. § 1641(f)(1).

> The Court also rejects Fairbanks' argument that it is clear that the assignment was made "solely for [its] administrative convenience," **which if so would preclude it from being treated as the "owner" of the debt.** *Id.* § 1641(f)(2). Defendants have squarely alleged that Fairbanks is an assignee of the loan—an allegation sufficient to permit them to assert rescission against Fairbanks, *see* 15 U.S.C. § 1641(c)—and they allege nothing that hints at the possibility that the assignment was made solely for Fairbanks' administrative convenience.

<u>Id</u>, 225 F. Supp. 2d at 914.

It is true that Alabama is a non-judicial foreclosure state and, unlike the <u>Fairbanks</u> case,

Nationstar has not filed any pleading alleging it to be the owner of the debt as no such pleading is

required in an Alabama foreclosure. However, the conceptual duplicity addressed in <u>Fairbanks</u> is

identical to the position Nationstar takes here. Nationstar sent to Ms. Valrie and published in the

paper a notice claiming to be the creditor and declaring that a foreclosure sale would be held by Nationstar as creditor. Had no action been taken to stop the sale, Nationstar would have foreclosed in its own name as it has done on many other loans which it has serviced. Now, faced with capped statutory penalties under Section 1640 for failure to send the Section 1641(g) disclosure, it claims that it is not really the owner of the loan but rather merely a servicer taking assignment "solely for administrative convenience." As illustrated in Fairbanks, Nationstar cannot have it both ways. It can not simultaneously claim to have been assigned a loan "solely for administrative convenience" and claim that the very same assignment transferred the right to conduct a foreclosure its own name. Put another way, Nationstar either obtained ownership of the loan by the Assignment or it did not. If it is to conduct a valid foreclosure in its own name, then the answer must be that it did. To change its position now just to escape the capped TILA penalties is an administrative convenience not afforded Nationstar under either Sections 1641(f) or (g).

**E.      Plaintiffs Are Not Required to Plead Non-Existence of Affirmative Defense**

Nationstar's argument that Section 1641(f) provides a "safe harbor" for the conveyance of the loan to Nationstar is in the nature of an affirmative defense, as to which Nationstar has the burden of proof. An affirmative defense is defined as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." Black's Law Dictionary 430 (7th ed.1999); see also Saks v. Franklin Covey Co., 316 F.3d 337, 350 (2d Cir. 2003). Here Nationstar argues that even if there was a conveyance of the loan, Section 1641(f) provides a defense for a servicer. Nationstar has the burden of proving this defense, In re Rawson Food Serv., Inc., 846 F.2d 1343, 1348 (11th Cir. 1988), and the ultimate viability of that defense is not at play at this stage. To defeat a motion to dismiss,

Plaintiff is only required to state facts necessary to render her legal claims plausible. She is not required to anticipate and plead around potential affirmative defenses. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004); Tregenza v. Great American Communications Co., 12 F.3d 717, 718 (7th Cir.1993). Therefore, Nationstar's Section 1641(f) "safe harbor" argument should be disregarded for purposes of its motion to dismiss.

## F. Requirement that Servicer Identify Owner upon Request Is Immaterial

Nationstar states that the Complaint should be dismissed because Ms Valrie failed to make a written request under Section 1641(f)(2) for identification of the owner of her mortgage. That provision states as follows:

> Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

15 U.S.C.A. § 1641(f)(2). Nationstar asks this Court to write into Section 1641(g) a caveat that no liability can ensue unless a plaintiff first make a request under Section 1641(f)(2). Such a position is completely without merit.

Section 1641(g) imposes clear and absolute obligation to provide a very simple disclosure when a loan is transferred. There is no condition of liability tied to any duty by a borrower to make an affirmative request. In fact, the legislative history makes it clear that when it passed Section 1641(g), Congress was well aware of the borrower's right to request identification of the owner under Section 1641(f)(2). Congress was also keenly aware of the fact that servicers routinely ignore those requests and the fact that there were no time limits or statutory penalties attached to Section

1641(f)(2).  In fact, the inadequacy of Section 1641(f)(2), created by recalcitrant servicers, to provide

this "common sense" information is cited as a main reason for creating Section 1641(g).

> It seems like common sense if you have a mortgage on your home, you ought to know who holds the mortgage. But in today's real estate market, where the original lender often sells the loan to another entity, you can lose track and not know who actually owns your mortgage. So we are doing a very simple. . ..  It is very easy: When your mortgage is sold or transferred, the homeowner must be informed who owns that mortgage. *And Federal law [Section 1641(f)(2)] does require that the servicer tell the homeowner the identify of the person holding their mortgage. But servicers routinely ignore requests from homeowners for information on the noteholder.. . .While servicers are required to disclose this information, there are no penalties in the law for noncompliance and no remedies for a homeowner faced with a recalcitrant servicer. The law has also failed to protect homeowners because there is no specific requirement that servicers identify the agent or party with the authority to act on behalf of the note holder.* [Section 1641(g)]provides borrowers with the basic right to know who owns their loan by requiring that any time a mortgage loan is sold or transferred, the new note owner shall notify the borrower within 30 days of the following: the identity, address and telephone number of the new creditor: the date of transfer; how to reach an agent or party with the authority to act on behalf of the new creditor; the location of the place where the transfer is recorded; and any other relevant  information regarding the new creditor.

155 Cong. Rec. S5098-99 (statement of Sen. Boxer)(emphasis added).

Nationstar's position that Ms Valrie did not first submit a written request not only conflicts

with the plain language of Section 1641(g), it flies in the face of the reason for that provision's very

existence.


**H.**    **Some Practical Considerations Regarding Section 1641**

There are some practical effects of Section 1641(g) liability that are worth noting.  First, the

Section 1641(g) disclosures do not impose a large administrative burden on mortgage lenders.

Section 1641(g) is carefully tailored to require only the basic information which a borrower would

need to contact the owner of the loan.  Congress intended this requirement to be "very narrowly

targeted. . .with little cost to the [mortagage] industry." 155 Cong. Rec. S5099 (statement of Sen.

Boxer).  In fact, other mortgage servicers are complying this these new requirements when they take

a pre-foreclosure assignment.  They simply provide the one-page disclosure with the contact

information of the servicer who became the new owner.[6]  It is also worth noting that liability under

Section 1641(g) for failure to provide the disclosures is not open ended.  Class and individual

liability for statutory penalties is carefully limited.  Those penalties are capped at $4,000 for

individual cases and $1,000,000 for class liability, regardless of the size of the class. 15 U.S.C. §

1640(a). On the other hand, if Nationstar is determined not to be the creditor, even after it takes

assignment of the mortgage, then its ability to institute foreclosure against Ms Valrie and thousands

like her is called into question.  Not only would this truly expose Nationstar to open-ended liabilty

for wrongful foreclosures, it would tack on instability to an already dangerously unstable real estate

market because thousands of properties, having been foreclosed upon by a non-creditor (Nationstar),

would carry title clouds that would potentially follow the property from buyer to buyer.


### CONCLUSION

For all the reasons stated herein, Nationstar's motion to dismiss is due to be denied.


                  \s\Kenneth J. Riemer
                  KENNETH J. RIEMER
                  EARL P. UNDERWOOD, JR.
                  Underwood & Riemer, P.C.

---

[6]The undersigned counsel filed a Section 1641 case against U.S. Bank, a servicer who like Nationstar took assignment of a loan prior to foreclosing in its own name.  Jeff and Miranda Smart v. U.S. Bank National Association, CV 11-00422-N (S.D. Ala). That case was voluntarily dismissed after defense counsel provided a copy of the Section 1641 transfer notice it claimed was provided to the Smarts.  A copy of that notice is attached hereto as Exhibit 2.

P.O. Box 1206
Mobile, Alabama 36633
(251) 432-9212
(251) 433-7172 (fax)
Email: kjr@alaconsumerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that on October 20, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the counsel of record

      <u>  s/Kenneth J. Riemer  </u>
      KENNETH J. RIEMER (RIEMK8712)