# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JACQUELINE VALRIE, individually** | ) | |
| **and on behalf of all similarly** | ) | |
| **situated individuals,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 11-404-CG-N** |
| | ) | |
| **NATIONSTAR MORTGAGE, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on Defendant's motion for summary judgment (Doc. 66), Plaintiff's response and opposition thereto (Doc. 75), and Defendant's reply (Doc. 81). Upon consideration of the parties' briefs and evidentiary submissions (Docs. 65, 66, 66–1 to 66–7, 75, 75-1 to 75-7, 81, and 82), Defendant's motion is due to be **GRANTED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On July 29, 2003, Plaintiff Jacqueline Valrie executed a $115,920.00 Promissory Note with Homecomings Financial Network, Inc. ("HFN") secured by a mortgage for real property in Mobile, Alabama. (Doc. 1 at 2; Doc. 66-3 at 8-22; Doc. 75-1; Doc. 75-2). The legal title to the mortgage was held by Mortgage Electronic Registration Systems, Inc. ("MERS"). The mortgage reflects that (1) MERS "is acting solely as a nominee for Lender and Lender's successors and assigns"; (2) MERS is granted the power of sale; and (3) "MERS holds only legal title to the

interest granted by Borrower . . . but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successor and assigns) has the right[ ] to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender . . . ." (Doc. 75-1 at 1, 3; Doc. 66-3 at 8, 10.)  At some unknown time after origination, HFN endorsed the note to GMAC Mortgage Corporation ("GMAC").  GMAC later endorsed the note in blank. (Doc. 75-2 at 3; Doc. 75-3 at 7-8.)

On August 1, 2003, GMAC took over as servicer of the loan.  According to Defendant, GMAC sold the loan to Federal National Mortgage Association ("Fannie Mae") on September 9, 2003.[1]  (Doc. 66-3 at 2; Doc. 66-4 at 2; Doc. 66-6 at 54.)  It is undisputed that Fannie Mae is the current owner of Plaintiff's loan.  (Doc. 66-1 at 16-17.)  On December 31, 2008, GMAC transferred its servicing rights to Nationstar.  (Doc. 66-3 at 2, 23; Doc. 66-6 at 54, 56; Doc. 75 at 2 n.1.).  In February 2009, Nationstar reported to Fannie Mae that Plaintiff was delinquent on her loan

---

[1]   In support, Defendant relies upon the affidavits of Amy Fleitas, the Default Manager for GMAC (Doc. 66-3 at 2), Andrew Loll, a Vice President of Nationstar (Doc. 66-6 at 54), and Bryan Camilli, an Assistant Vice President for Federal National Mortgage Association.  Defendant also points to Andrew Loll's deposition testimony stating that Plaintiff's loan was owned by Fannie Mae (Doc. 66-2 at 3), evidence of attempts by Nationstar to offer Plaintiff loan modification and repayment plans uniquely available to borrowers whose loans were owned by Fannie Mae (Doc. 66-6 at 2, 12-31), a screen shot from Fannie Mae's internal website indicating Fannie Mae ownership of the loan since 2003 (Doc. 66-4 at 4), and a MERS internal report identifying Fannie Mae as the "investor" (Doc. 66-6 at 55).  Plaintiff offers no evidence of her own, except the observation that "there is no note endorsement or other conveyance identifying a transfer of the note to Fannie Mae." (Doc. 75 at 18.)

payments.[2]  On September 29, 2010, MERS executed an "Assignment of Deed of Trust," (the "Assignment") transferring to Nationstar "all rights, title, interest, and liens owned or held by [MERS] in the herein after described land by virtue of said indebtedness herein conveyed and assigned."  (Doc. 66-2 at 2, 5-6; Doc. 75-5 at 1.)  It is undisputed that the purpose of the Assignment was to permit Nationstar to conduct a foreclosure in its own name as required under the Fannie Mae Guidelines.  (Doc. 66 at 9; Doc. 66-6 at 2; 75 at 4; Doc. 75-3.)  Nationstar commenced foreclosure proceedings, which Plaintiff successfully enjoined by a November 5, 2010 order of the Circuit Court of Mobile County, Alabama.  Valrie v. Nationstar Mortgage Ltd, CV-2010-902492.00 (Ala. Cir. Ct., Mobile Cnty.).

On July 25, 2011, Valrie commenced the instant proceeding by filing a one (1) count complaint in this Court alleging that Nationstar violated the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA") and its implementing Federal Reserve Board Regulation Z, 13 C.F.R. Part 226 *et seq*.[3]  (Doc. 1.)  Specifically, Plaintiff alleges that Nationstar failed to provide notice of the transfer of ownership interest in Plaintiff's mortgage loan as required by 18 U.S.C. § 1641(g). (Id. at 1.)

---

2  Plaintiff does not dispute these facts, so they are deemed admitted pursuant to SD ALA LR 7.2(b).  See also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302-03 (11th Cir. 2009) (giving deference to interpretation of local rule which provides that if a "party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's Statement of Material Facts with specific citations to evidence, or otherwise fails to state a valid objection to the material fact pursuant to Local Rule 56.1B(2), such fact is deemed admitted by the respondent");

3  Plaintiff initiated this action as a class action complaint.  However, at the present stage the Court addresses only the merits of Plaintiff's individual claim as set forth in Count One.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The district court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See id. at 251-52. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds might differ on the

inferences arising from undisputed facts, then [a court] should deny summary judgment." Hinesville Bank v. Pony Exp. Courier Corp., 868 F.2d 1532, 1535 (11th Cir. 1989) (citing Mercantile Bank & Trust Co. v. Fid. & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 432 F. App'x. 867, 870 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(e)(2)). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

## III.   DISCUSSION

A.   Article III Standing

Before proceeding to the merits, the Court first addresses Defendant's argument that Plaintiff lacks Article III standing because she did not allege a concrete and particularized injury-in-fact, other than a violation of TILA.  (Doc. 66 at 29-30.)  Chief Judge Steele of this Court recently addressed this very issue in a similar case.  As he explained, "Section 1641(g) creates a legal right to certain disclosures, and an invasion of that right can create standing."  Reed v. Chase Home Finance, LLC, -- F. Supp. 2d --, 2012 WL 4381473, at *2 (S.D. Ala. Sept. 26, 2012).  This is true "even absent other damage." Id. at *3 ("[T]he availability of statutory damages for the violation of a statutory right satisfies Article III's injury-in-fact requirement, even where no actual damages were incurred.").  Because Plaintiff has alleged that she did not receive a notice to which she was statutorily entitled, she has alleged an injury-in-fact sufficient to confer Article III standing upon this Court.

B.   Administrative Convenience under Section 1641(f)

Plaintiff contends that the 2010 Assignment from MERS to Nationstar triggered Section 1641(g)'s notice requirements.  Defendant responds that notice was not required because MERS never owned an interest in Plaintiff's loan that it could transfer to Nationstar.  Defendant further argues that, even if it owned an

6

interest in Plaintiff's loan, the Assignment was solely for the administrative convenience of Nationstar such that no notice was required pursuant to Section 1641(f).

While the parties devote large portions of their briefs to the matter of whether Nationstar was a "new owner or assignee of the debt," § 1641(g)(1), this question is moot if the Assignment falls within the safe harbor of Section 1641(f). Under Section 1641(f)(2):

> [a] servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation.

Undisputedly, Nationstar became the servicer of Plaintiff's debt in 2003. (Doc. 66 at 5; Doc. 75 at 2 n.1.) The next question, then, is whether MERS assigned Plaintiff's obligation to Nationstar solely for Nationstar's administrative convenience.

This Court has recently confronted the meaning of "administrative convenience" as that term is used in Section 1641(f) in a pair of cases: Reed, 2012 WL 4381473, and Giles v. Wells Fargo Bank, NA, 2012 WL 4062699 (S.D. Ala. Sept. 14, 2012).

In Giles, 2012 WL 4062699, at *6, Judge DuBose held that loan servicer Wells Fargo obtained ownership of the plaintiff's loan via an assignment from MERS but concluded that such ownership was necessary to fulfill its servicing requirements – specifically, to conduct foreclosure proceedings on behalf of Fannie Mae. Additionally, Judge DuBose noted that, even though Fannie Mae received a

benefit due to the assignment by avoiding a transfer tax and recording expenses, this boon did not undercut the conclusion that the assignment was "solely" for Wells Fargo's administrative convenience.  Id.  Rather, the key was that the assignee was merely a nominal owner and did not receive a financial interest in the transferred loan.  Id.; see also Gale v. First Franklin Loan Servs., -- F.3d --, 2012 WL 3764700, at *4 (9th Cir. Aug. 31, 2012) ("Paragraph (f)(2) [of Section 1641] carves out an exception to the general rule of paragraph (f)(1), so that servicers who are merely nominal assignees (that is, when a servicer is assigned ownership of the loan solely for 'administrative convenience') would not be liable on the same basis as actual owners of the loan.").  Under these facts, Judge DuBose granted summary judgment in favor of the defendant and held that the record established that the transfer was for the "administrative convenience" of Wells Fargo.  Id.

        More recently, in Reed, 2012 WL 4381473, at *6-10, Chief Judge Steele provided a very cogent and in-depth analysis of the meaning of the Section 1641(f) "administrative convenience" safe harbor.  Chief Judge Steele rejected the argument that "administrative convenience" is restricted to "ministerial duties."  Id. at *8 (Section 1641(f) "extends protection to assignments of the obligation that are administratively convenient to any and all servicing duties undertaken by the servicer—substantive as well as ministerial.").  Rather, "[w]hat makes conduct administratively convenient under Section 1641(f) is that the conduct renders it easier for the servicer to perform that which its client requires in servicing the obligation."  Id. at *9 n.9.

As defined by Chief Judge Steele, the relevant questions are (1) did the assignment assist the defendant in performing its duties as servicer, and (2) was that the purpose of the assignment?  See id. at *8.  As to the first question, in the instant case, the Assignment clearly facilitated Nationstar's ability to perform a servicing duty that it was obligated to perform for Fannie Mae.  A servicer of a Fannie Mae loan must take action necessary to protect Fannie Mae's interest in the secured property, including initiating foreclosure proceedings.  (Doc. 66-6 at 33-34.) As Plaintiff admits, Nationstar was required by its arrangements with Fannie Mae to foreclose in its own name.  (Doc. 75-4 at 3.)  The Fannie Mae Guidelines instruct that when MERS is the mortgagee of record, the servicer should prepare an assignment from MERS to the servicer and bring the foreclosure in its own name. (Doc. 75-4 at 3).  Thus, the Assignment allowed Nationstar to perform the servicing duty of protecting Fannie Mae's interest in its loans.  See Giles, 2012 WL 4062699, at *6 ("[I]n order for Wells Fargo to fulfill its obligations as a servicer for Fannie Mae, it was necessary to transfer ownership of the loan to Wells Fargo.  The evidence establishes that the transfer was for the "administrative convenience" of Wells Fargo.").

However, Plaintiff contends the main purpose of this assignment was to benefit Fannie Mae, by "ensur[ing] that the transfer of title resulting from a foreclosure 'will not result in the imposition of a transfer tax' payable by Fannie Mae."  (Doc. 75 at 3, 20.)  While Plaintiff apparently argues such a benefit to Fannie Mae cannot be "solely" for Defendant's administrative convenience in servicing the

loan (Doc. 75 at 19-20), this argument has already been rejected by both Judge DuBose in <u>Giles</u>, 2012 WL 4062699, at \*6, and Chief Judge Steele in <u>Reed</u>, 2012 WL 4381473, at \*9 n.9 & 10, and the undersigned agrees with their analysis.

In sum, even assuming, without deciding, that Nationstar was the owner of Plaintiff's obligation such that Section 1641(g)'s notice requirement would otherwise be triggered, Nationstar, as a matter of law, did not violate its statutory duty to Plaintiff because it was assigned the obligation "solely for the administrative convenience of the servicer in servicing the obligation." § 1641(f)(2).

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED**.  Plaintiff's motion to strike certain expert testimony (Doc. 73) is **DENIED AS MOOT**, as the Court has not relied upon any of the evidence proffered in the expert testimony.

It is **FURTHER ORDERED** that the parties shall file, on or before **November 13, 2012**, a **Joint Status Report** indicating the status of the class claims in this case in light of this Order as well as any reasons why entry of Final Judgment should not issue in this case.

**DONE** and **ORDERED** this 29th day of October, 2012.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE